UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

CHIQUITA INT'L, LTD., ET AL.,                  :

        Plaintiffs,                          :

        -against-                            :     **MEMORANDUM and ORDER**

M/V CLOUDY BAY, her engines, boilers,          :     08 Civ. 1041 (KNF)
tackle, furniture, apparel, etc., *in rem*, ET AL.,
                                                             :
        Defendants.
                                                            :
------------------------------------------------------------X

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

## I. INTRODUCTION

In the above-captioned action, which is within the court's admiralty and maritime jurisdiction, the plaintiffs, Chiquita International Limited ("Chiquita") and Great White Fleet Limited (collectively, "the plaintiffs"), seek damages, for an injury arising from the "premature ripening and turning" of bananas that were transported by the defendants – the Cloudy Bay ("the vessel"), Cloudy Bay Shipping Co., and Seatrade Group N.V. Curacao (collectively, "the defendants") – in May and June of 2006. The defendants have made a motion for sanctions against the plaintiffs for their purported destruction, "spoliation," of evidence; and the plaintiffs oppose this motion. The defendants' motion is addressed below.

## II. BACKGROUND

The defendants contend the plaintiffs failed to respond to the defendants' September 2008 discovery demands – which requested "pre-shipment temperature records" for "shore side

1

containers" that stored bananas before they were delivered to the vessel. The defendants assert that the pre-shipment condition of the bananas is crucial information in this case, and the plaintiffs failed to preserve that information. Thus, according to the defendants, at a minimum, they are entitled to "an inference at trial that the evidence destroyed by the Plaintiffs be considered in a light favorable to Defendants, specifically raising a presumption that the shore side containers that stored the bananas before their delivery to the Vessel were improperly operating and caused the losses alleged in Plaintiffs' Complaint."

According to the deposition testimony of William Burgum ("Burgum"), the director of technical services for Chiquita in 2006, provided to the Court by the defendants, "containers" located at Chiquita's "packing station" have "a micro-processor that controls the refrigeration and . . . has a memory and it records all the delivery and return temperatures so it records when [the refrigeration] was on and when it was off." Burgum explained that this information may be downloaded from the containers; however, Chiquita does not keep a database of this information. Instead, the downloadable information is "just left in the memory and it overrides itself depending on how many grommets you told it to record, how frequently to record it. It will override itself in something between 30 days and eight or nine months."

Upon learning there were "some ripes coming off the [vessel]," Burgum requested container downloads, and he received "several downloads" in response. Burgum testified that he "never receive[d] every download because some microfilms are dropped down and were changed so the memory is gone," "[s]ome of the containers are gone missing," and other containers have "something wrong with the processing" and "won't record." Bergum estimated he received between 60 to 70 percent of the downloads he requested, and noted this was "typical" and reiterated "it's normally impossible to get a hundred percent of it, container downloads."

Burgum also testified that he kept the container downloads he received "on [his] computer, [his] laptop."

According to the affidavit of Thomas M. Grasso ("Grasso affidavit"), an attorney representing the plaintiffs, which was submitted in opposition to the defendants' motion for sanctions, the plaintiffs "obtained and immediately produced all of what we received as Bill Burgum's file, including the contained downloads, various [Quality Management System ("QMS")] reports . . . [and] emails sent by Mr. Burgum." In support of their contention, the plaintiffs attached, as an exhibit to the Grasso affidavit, a copy of a September 17, 2007 e-mail message, which provided various documents related to the defendants' allegations that the "cut to cool time for the cargo loaded in Costa Rica" was too long. This e-mail message contained files providing "download print outs which cover the periods between [sic] the containers were plugged in at the loadports till the time the cargo was stripped from the containers for being loaded on board." In addition, the plaintiffs have provided a copy of an e-mail message, sent to defense counsel, noting that the plaintiffs received "2 DVDs containing files from Bill Burgum's laptop computer and that they were available for review at our offices"; however, the defendants did not request to review these DVDs.

A certification submitted by the plaintiffs, regarding the bananas that ripened while on the vessel and were stored in Hold 4B, prepared by Samuel Lucas ("Lucas"), a "Logistics Quality Supervisor" employed by Chiquita, in Costa Rica, indicated that, based on his review of Chiquita's records, "the fruit from containers loaded to vessel 'Hold 4B' was harvested and loaded to the M/V CLOUDY BAY in under 18 hours and, therefore, required no refrigeration between its harvest and loading." Furthermore, according to Lucas, the fact that downloads from all the containers were not obtained is not surprising, because such data downloads were not kept

3

by Chiquita "in the ordinary course of business," since they are "unnecessary" given that "the relevant dates, times and temperatures are recorded and entered into the QMS database."

Although the defendants filed a memorandum of law replying to the plaintiffs' opposition to their motion for sanctions, the defendants have not addressed the plaintiffs' claims that: (1) no pre-loading refrigeration records exist for the bananas that were stored in Hold 4B on the vessel, since these bananas were not refrigerated before being loaded onto the vessel; (2) the defendants were provided e-mail messages with copies of the container downloads, received by Burgum; or (3) the defendants were invited to review two DVDs containing the files on Burgum's laptop, but failed to do so.

### III. DISCUSSION

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999). Sanctions may be imposed for both the intentional and negligent loss or destruction of evidence. See Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 108 (2d Cir. 2002). "[A] district court may impose sanctions for spoliation, exercising its inherent power to control litigation"; and a district court "has broad discretion in crafting a proper sanction for spoliation" though "the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." West, at 779 (quoting Kronisch v. United States, 150 F.3d 112, 126 [2d Cir. 1998]). "The sanction should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.'" West, id. at 779 (quoting Update Art, Inc. v.

Modiin Pub., Ltd., 843 F.2d 67, 71 [2d Cir. 1988]).  "[A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."  Residential Funding, 306 F.3d at 107 (quoting Byrnie v. Town of Cromwell, 243 F.3d 93, 107-12 [2d Cir. 2001]).

      The container downloads are relevant to whether the fruit at issue in this action was stored at improper temperatures, before being loaded onto the vessel.  The container downloads relevant to this inquiry are those from the containers that were loaded into decks containing ripened fruit.  Since the plaintiffs maintain that the fruit loaded in Hold 4B was not refrigerated prior to being loaded onto the vessel, because this fruit was cut within 18 hours of being loaded onto the vessel and did not yet require refrigeration, and the defendants have not challenged this claim, the Court finds it reasonable to conclude that no pre-loading refrigeration records for the fruit loaded into Hold 4B exist, and, thus, no adverse inference should be drawn with regard to this fruit, based on the "spoliation" of pre-loading refrigeration records.

      In addition, the Court finds that, with respect to the records for the remaining fruit, that ripened while on board the vessel, the plaintiffs have shown they provided the container downloads requested by Burgum once he learned that fruit had ripened on the vessel.  Based on Bergum's deposition testimony, that it is "impossible" to obtain all container downloads, and that the "several downloads" he received represented 60 to 70 percent of the downloads he requested, the Court finds that the provision of at least eleven container downloads, appears to be

representative of the number of containers that held bananas that were ultimately housed in holds that had ripened bananas.[1]  In addition, the Court cannot conclude that the 30 to 40 percent of downloads not provided were "destroyed" by the plaintiffs, since Burgum's deposition testimony establishes that some containers had "gone missing" and other containers have "something wrong with the processing" and "won't record," which were "typical" incidents, and, thus not evidence of destruction.  Furthermore, inasmuch as the defendants were invited to view the contents of Burgum's laptop, which Burgum testified contained all the container downloads he received, and did not avail themselves of this opportunity, the defendants' request, for an adverse inference to be drawn against the plaintiffs, appears unwarranted, since the defendants did not act to avoid, or reduce, the prejudice they now claim to face.  In addition, the plaintiffs' provision of container downloads, and their offer to allow the defendants' counsel to peruse the contents of Burgum's laptop do not establish "wrongful destruction of evidence," West, 167 F.3d at 779, nor do these actions accord with destroying records "'with a culpable state of mind,'" Residential Funding Corp., 306 F.3d at 107 (quoting Byrnie, 243 F.3d at 109).  The Court finds that the

---

[1] According to a report – prepared by Dr. Ann Snowdon, who studies "forensic post-harvest pathology of fruits and vegetables"– attached to the Grasso affidavit, 12,939 boxes of "yellow bananas" were discharged in Mersin, Turkey, and 63,604 boxes of "green bananas" were discharged.  Of the yellowed bananas, Hold 4B held 4,832 boxes – 32 percent of its cargo; Hold 2A held 4,896 boxes – 37 percent of its cargo; and Hold 1B held 1,811 boxes – 18 percent of its cargo.  In addition, between 5 to 6 percent of the bananas loaded into Holds 1A, 1C and 1D were yellowed; and 1 percent of the bananas housed in Hold 2B were yellowed.  According to the defendants, 127 containers were used to store cargo before it was loaded aboard the vessel; according to the plaintiffs, 92 containers.  Regardless, considering that Holds 1A-D were loaded with 33,888 boxes of bananas, Hold 2A was loaded with 13,152 boxes of bananas, Holds 3A and 3B were loaded with 30,048 boxes of bananas, and Holds 4A and 4B were loaded with 30,672 boxes of bananas, the defendants received at least eleven container downloads – downloads for approximately 10 percent of the fruit in pre-loading containers – which appears to be roughly proportional to the number of container downloads that would correspond to the number of boxes of yellowed bananas.

defendants have not shown the plaintiffs destroyed, altered, or failed to preserve evidence for the defendants' use, either willfully or negligently, so as to justify drawing an adverse inference against the plaintiffs predicated on spoliated evidence. Therefore, the relief the defendants seek, through the instant motion, is not warranted.

By a letter, dated August 11, 2009, the plaintiffs assert that the defendants, in their reply memorandum of law, raise issues and make reference to evidentiary matters that were not presented to the Court in their initial moving papers. As a result, the plaintiffs request that the Court "ignore the newly introduced information concerning the testimony of Eduardo Enrique Melendez as well as to the calculations provided by defense counsel." Since the Court has found that the defendants' motion for sanctions, based upon a theory of spoliation, should be denied, the plaintiffs' challenge to the defendants' reply memorandum is denied, as moot.

## IV. CONCLUSION

For the reasons set forth above, the defendants' motion for sanctions, Dkt. Entry No. 14, is denied, and the plaintiffs' challenge to the contents of the defendants' reply memorandum of law is denied, as moot.

Dated: New York, New York
       September 30, 2009

SO ORDERED:

*Kevin Nathaniel Fox*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE